IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-cv-04006 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sheila C. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed a motion for summary judgment seeking to uphold the prior decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §1383(c)(3). For the reasons stated herein, Claimant's motion to reverse or remand the decision of the Commissioner, (Dckt. #21), is granted and the Commissioner's motion for summary judgment, (Dckt. #24), is denied.

**I.     BACKGROUND**

   **A.     Procedural History**

On August 15, 2017, Claimant (then fifty-eight years old) filed an application for SSI, alleging disability dating back to January 1, 2013, due to limitations from depression, diabetes,

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has been substituted as the named defendant. Fed.R.Civ.P. 25(d).

high blood pressure, and high cholesterol. (Administrative Record ("R.") 103-04, 180). Her claim was denied initially and upon reconsideration. (R. 35). Claimant filed a timely request for a hearing, which was first held on March 13, 2019, before Administrative Law Judge ("ALJ") Jordan Garelick, and then continued to give Claimant the opportunity to obtain counsel. (R. 609-18). A subsequent hearing was held on November 19, 2019, at which Claimant again appeared without counsel. (R. 51-102). On January 21, 2020, the ALJ issued a written decision denying Claimant's application for benefits. (R. 35-46). The Appeals Council denied review on April 12, 2021, (R. 16-21), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

      **B.**     **The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled, and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), or her capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, she is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

### C. The Evidence Presented to the ALJ

Again, Claimant seeks benefits due to limitations stemming from depression, diabetes, high blood pressure, and high cholesterol. (R. 103-04). Because Claimant's arguments on

3

appeal focus solely on the ALJ's breach of his duty to develop the record for a *pro se* claimant, the Court narrows its review of the evidence accordingly.

### 1. Evidence from Claimant's Testimony

As described above, on March 13, 2019, Claimant appeared without counsel for her hearing before the ALJ. (R. 611-18). At this brief hearing, Claimant requested that the ALJ obtain her medical records from Lawndale Christian Health[2] and specifically testified to appointment dates in March and December of 2018, and an upcoming appointment in March of 2019. (R. 614-15). The hearing was then continued so that Claimant could obtain counsel. (R. 613).

Claimant next appeared for a hearing before the ALJ on November 19, 2019, again without counsel. (R. 51-53). In addition to Claimant, the following individuals appeared and testified: (1) Vocational Expert ("VE"), Jonathan Carlos DeLuna; (2) Claimant's social worker/patient therapist, James Manock, LCSW; and (3) Claimant's friend, Mary Madison. (R. 52). At this hearing, the ALJ noted that the Commissioner requested records from Lawndale[3] Christian Health and received fifty-eight pages of records in response. (R. 55).

Claimant testified at the hearing that her diabetes was bothering her and that she was taking Metformin and Glipizide twice a day to treat the condition. (R. 57). Notwithstanding this, Claimant testified she went into a "diabetic coma" for the first time two weeks prior to the hearing. (R. 56). Claimant did not know exactly what happened or whether she was taken to the

---

[2] The ALJ asked Claimant "[a]re you going to get the records for us or do you want us to go for 'em?" Claimant responded, "[y]ou can for 'em," and the ALJ proceeded to give Claimant a "waiver," presumably permitting the release of the records to the SSA. (R. 615).

[3] The transcript states "Londell Christian Health [phonetic]," which the record reflects is Lawndale Christian Health. (R. 55).

4

hospital, but she recalled that the paramedics woke her up and told her that her "blood sugar was 50." [4] (*Id.*). After this incident, Claimant's provider put her "on a new pill, [that] start[s] with an O" and advised her to eat more. (R. 58). Claimant was told by her provider if the new pills do not work, she should go to the emergency room for further testing. (R. 59). Claimant further testified that she sees her primary care physician at Lawndale Christian Health every two to three months for her diabetes, stomach issues, and hypertension, and that she sees her psychiatrist, also at Lawndale, every two to three months. (R. 61).

### 2. Evidence from Claimant's Therapist

James Manock L.C.S.W., Claimant's outpatient therapist, also testified at the hearing. (R. 70). Manock has been Claimant's therapist since 2015. (R. 71, 73). He diagnosed Claimant with anxiety disorder and major depression with anxiety but without psychosis. (R. 75). He generally sees Claimant for an hour once a week, and if they cannot meet because of her condition, they will have a phone conversation. (R. 73). Manock described Claimant as a survivor who finds it difficult to trust after having gone through a lot of trauma and being taken advantage of by people. (R. 74). According to Manock, Claimant was making slow progress in her therapy sessions. (R. 81).

Manock described Claimant as responsible and able to understand and remember instructions maybe fifty percent of the time. (R. 75). He also stated that her stress comes out physically; it would be difficult for her to interact with a supervisor and take instructions; and while she can interact appropriately with the public, interacting with coworkers would be more

---

[4] "Severe low blood sugar is below 54 mg/dL." Centers for Disease Control, Low Blood Sugar (Hypoglycemia), https://www.cdc.gov/diabetes/basics/low-blood-sugar.html) (last visited April 11, 2023); *see also John S. v. Kijakazi*, No. 120CV03037MJDJMS, 2022 WL 1564531, at *3, n.5 (S.D.Ind. May 17, 2022) (describing low blood sugar as below 70 mg/dl and "severe" low blood sugar "at lower levels," which "is dangerous and needs treatment right away.").

5

challenging for her. (R. 76-77). According to Manock, Claimant would not be able to keep up the pace on an assembly line, and tolerating occasional changes in the workplace setting or process would be challenging for her. (R. 78-79). Manock testified that Claimant would ultimately need to be in a low-stress job, although he did not believe she was suitable to have any job at that time given her condition. (R. 79).

Manock explained that he does not keep regular notes but will sometimes do so "if it's significant." (R. 72). The ALJ provided Manock three weeks following the hearing to submit his records on Claimant. (R. 84).

### 3. Evidence from the Vocational Expert's Testimony

The Vocational Expert ("VE") testified that an individual of similar age, education, and work experience as Claimant with the ALJ's ultimate RFC assessment, *see infra* at Section I(D), would not be able to do Claimant's past relevant work as a wire transfer clerk but could perform jobs in the national economy. (R. 96-99). The VE stated there would be work for such an individual as a marker (305,000 positions), router (53,000 positions), and mail sorter (41,000 positions). (R. 99).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her application date of August 15, 2017. (R. 37). At step two, the ALJ determined that Claimant suffered from the following severe impairments: major depression and general anxiety disorder. (*Id.*). The ALJ determined that Claimant's physical impairments of hypertension, diabetes mellitus, and rectal polyp, among other impairments, were non-severe. (R. 38). The ALJ explained:

> these conditions were being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance. . . . The [C]laimant's physicians did not recommend aggressive treatment for these conditions with the results of her various diagnostic studies as well as blood glucose and blood pressure tests failing to reveal significant or disabling associated pathologies. . . . Additionally, the [C]laimant's treatment or medical examiners typically observe substantial loss of musculoskeletal, respiratory, cardiopulmonary, or neurologic functioning stemming from these conditions. . . . The [C]laimant's non-severe medically determinable physical impairments appear to be either episodic and intermittent or well contained, with only infrequent exacerbations that would not interfere with appropriate work activities on a sustained, ongoing basis. Accordingly, they fail to satisfy the durational and substantive requirements of a severe impairment.

(R. 38).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 39). In support of this finding, the ALJ assessed the so-called "paragraph B criteria" and found that Claimant's impairments caused a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. (R. 39-40).

Before turning to step four, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> she cannot climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to operational control moving machinery and unprotected heights; she is limited to performing simple routine repetitive tasks; she can understand, remember, and carry out simple work instructions, but is unable to perform more complex decision-making that would require creative solutions to novel situations; she can tolerate no more than occasional changes in the work setting; she can exercise no more than simple workplace judgements; she can perform only low stress end of the day type of work; she can occasionally perform decision-making judgments and tolerate changes in the workplace setting; she can work in an environment that is not a fast-paced production; she can tolerate normal production pace-work with difficulty

7

>tolerating jobs that have significantly higher than average pace; she can occasionally interact with the public, coworkers, and supervisors; and she cannot perform tandem tasks with co-workers.

(R. 40-41). At step four, the ALJ noted that Claimant was unable to perform any past relevant work. (R. 44). At step five, the ALJ concluded that a significant number of jobs existed in the national economy that Claimant could perform given her age, education, work experience, and RFC, including the representative positions of marker, router, and mail sorter. (R. 45). As such, the ALJ found that Claimant had not been under a disability since August 15, 2017, the date her application was filed. (R. 46).

## II.   STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th

8

Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**III.   ANALYSIS**

Claimant raises one issue in support of remand: namely that the ALJ breached his duty to develop the record for the *pro se* Claimant, and improperly used the undeveloped record to discount Claimant's subjective symptoms, the written opinion and testimony of Claimant's therapist, and Claimant's limitations from diabetes mellitus. Specifically, Claimant argues that despite the testimony and reports from Claimant about her regular visits with her treatment providers, the ALJ failed to obtain updated records from Claimant's psychiatrist, updated records from Lawndale Christian Health Center, and records relating to the diabetic coma Claimant experienced two weeks prior to the November 2019 hearing.

As explained below, the Court agrees that the ALJ failed to obtain records relating to Claimant's diabetic coma and that her failure to do so was prejudicial. Because this error necessitates a remand to the Social Security Administration, the Court will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The

9

Court's decision in this regard is not a comment on the merits of Claimant's arguments regarding the other records in question and she is free to assert them on remand.

### A. The ALJ failed to meet his duty to develop a full and fair record.

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). This duty on the ALJ is "enhanced when a claimant appears without counsel" and the ALJ must then "scrupulously and conscientiously [] probe into, inquire of, and explore for all the relevant facts." *Nelms*, 553 F.3d at 1098, (citing *Thompson*, 933 F.2d at 585-86 (additional citations omitted)). In addition, while pro se litigants must provide some medical evidence, the "ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098 (citing 20 C.F.R. §§ 416.912(d)-(f)[5] (additional citations omitted)). Although this duty is "heightened" when a claimant appears pro se, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007), it applies "[e]ven when a claimant is represented by counsel," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Failure to fulfill this obligation, especially when a claimant is unassisted by counsel, is "good cause" to remand for the gathering of additional evidence. *Thompson*, 933 F.2d at 586.

Here, Claimant testified that she experienced a diabetic coma two weeks before the November 19, 2019 hearing notwithstanding the fact that she was taking two medications twice a day to treat the condition. (R. 56-57, 59). Despite the potential significance of this medical emergency, the ALJ made no attempt to obtain records about the incident or to elicit further

---

[5] 20 C.F.R. §§416.912(d)-(f) was revised to 20 C.F.R. §§416.912(b), effective March 27, 2017.

information from Claimant about the identities of the paramedics, hospital, clinic, or other providers who provided her with treatment following the incident.[6] (R. 58-59). In addition, the ALJ did not address this incident, or explain his failure to seek records about it, in the course of explaining his finding that Claimant's diabetes mellitus was "non-severe." (R. 38).

Even the Commissioner acknowledges that the omission of these records surrounding this medical emergency "admittedly presents a closer call" than the other records Claimant argues were missing. (Dckt. #26 at 7). But, according to the Commissioner, the missing records related to the diabetic incident are not a "prejudicial significant omission" for two reasons. *Id*. First, the Commissioner asserts that "[a] diabetic coma occurs when blood sugar irregularities cause unconsciousness to the degree that the individual cannot awaken or respond to stimulation [and] [t]his differs from what plaintiff described: an episode of unconsciousness where she was awoken by paramedics." *Id*. Second, Claimant's medical emergency would at most "mark the subsequent deterioration of a previously non-disabling condition, and certainly would not clear the duration requirements of 20 C.F.R. §404.1509."[7] *Id*.

The Commissioner's argument is unpersuasive. To begin, the ALJ never offered the Commissioner's reasons as the basis for his decision not to obtain the medical records related to Claimant's medical emergency and the Court therefore cannot consider them. *See, e.g.*, *Poole v.*

---

[6] Records relating to this incident could, at a minimum, be found at the Lawndale Christian Health Center, where Claimant received treatment from her primary care physician after the incident occurred. (R. 58-61). Notably, the ALJ did procure records from Lawndale Christian Health Center dated February 17, 2018 through April 18, 2018 following the Claimant's first hearing on March 13, 2019. (R. 614-15, 59, 543-600). However, the ALJ made no effort to obtain additional medical records from the Center following the second hearing despite being alerted to the existence of additional medical events, appointments, and medications.

[7] Claimant asserts that the applicable regulation is found at 20 C.F.R. §416.909. One way or the other, the text of both provisions require a claimant to meet the same duration requirement: in particular, "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

*Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022) ("We must confine our review to the reasons supplied by the ALJ, rather than allowing the government to invent new findings to rescue an insufficient decision on appeal.") (internal quotation marks omitted).

That said, it is not possible to determine the exact nature of Claimant's medical emergency without review of the pertinent medical records aside from saying that it was an acute condition created by her diabetes. Moreover, even if Claimant did not experience a "diabetic coma" per se, "[a]n extremely low blood glucose level may cause unconsciousness," *Pruett v. Arizona*, 606 F.Supp.2d 1065, 1068 (D.Ariz. 2009), and the "failure to treat severe hypoglycemia immediately can result in death." *M.F. by & through Ferrer v. New York City Dep't of Educ.*, 582 F.Supp.3d 49, 53 (E.D.N.Y. 2022). Thus, Claimant's diabetes-related medical emergency – which occurred despite her twice-a-day use of two diabetes medications – undermines the ALJ's findings that her diabetes was "well contained" and "amenable to proper control by adherence to recommended medical management." (R. 38). Finally, with respect to the duration requirement, Claimant's "history of diabetes is years-long and predates her SSI application" and this disease – unfortunately for Claimant – is expected to last more than twelve months. (Dckt. #29 at 4).

For these reasons, the Court finds that Claimant has shown prejudice by "set[ting] forth specific, relevant facts" – namely, the medical records and evidence concerning her diabetes-related medical emergency – that the ALJ did not obtain and consider. *Nelms*, 553 F.3d at 1098-99; *Eichorst v. Colvin*, No. 13 C 7635, 2015 WL 3747267, at *8 (N.D.Ill. June 15, 2015) (citing *Nelms* and finding prejudice); *Rinderer v. Colvin*, No. 14-cv-828-CJP, 2015 WL 3636389, at *5-6 (S.D.Ill. June 11, 2015) (same). As such, the ALJ did not meet his duty to develop a full and fair record and his failure to fulfill this obligation, especially when Claimant was unassisted by

12

counsel, is "good cause" to remand this case for the gathering of additional evidence. *Thompson*, 933 F.2d at 586; *Nelms*, 553 F.3d at 1098-99; *Smith*, 231 F.3d at 437.

## CONCLUSION

For the foregoing reasons, Claimant's motion in support of summary remand, (Dckt. #21), is granted and the Commissioner's motion for summary judgment, (Dckt. #24), is denied. This case is remanded to the Social Security Administration for proceedings consistent with this Opinion.

**ENTERED:** June 12, 2023

**Jeffrey I. Cummings**
**United States Magistrate Judge**